**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| PEDRO SANCHEZ, ) <br> ) <br> Petitioner, ) <br> ) <br> vs. ) <br> ) <br> JACQUELINE LASHBROOK, Warden, ) <br> ) <br> Respondent. ) | Case No. 17 C 3570 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Pedro Sanchez, who was convicted of murder in Illinois state court, has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. Sanchez alleges his trial and appellate counsel were ineffective and that his due process rights were violated.

## Background

In 2009, Robert Gooch and Elissa Hinton were dating. The couple shared an apartment in Joliet, Illinois. On May 21, 2009, they both went to sleep around 11 p.m. but awoke to the sound of the apartment buzzer. Gooch got out of bed and walked to the door. From bed, Hinton heard the murmur of voices and recognized the voice of Pedro Sanchez. Sanchez and Hinton knew each other, as Hinton had sexual relations with him several times while she was dating Gooch. Sanchez wanted to begin dating Hinton, but she had rebuffed his past advances. As Sanchez and Gooch spoke, Hinton testified she heard "mumbling" "about a girl." Ex. M at 19 (Hinton testimony). She then heard a gunshot. She got out of bed and found Gooch on the floor, bleeding from a

gunshot wound to the head.  She did not see the shooter.  Gooch died from his wounds.

Earlier in the day, Sanchez had met with several friends:  Jesus Zambrano, Michael Ortiz, and Christian Lopez.  They met at the home of LaToya Ortiz.  (To avoid confusion, the Court uses LaToya Ortiz's full name, but uses "Ortiz" to refer to Michael Ortiz.)  They spent the evening drinking alcohol and smoking marijuana.  Lopez testified that he had "a lot" to drink.  Ex. M at 109 (Lopez testimony).

Ortiz testified that, while partying at LaToya Ortiz's house, he overheard Sanchez talking on the telephone "[l]ike there was an argument" between "him and I guess his ex-girlfriend[.]"  Ex. M at 217 (Ortiz testimony).  Ortiz testified he overheard Sanchez asking the other party on the phone why she had left.  Ex. M at 218.  The defense called Hinton, the victim's partner, to testify.  She denied speaking with Sanchez on the day of the shooting.

LaToya Ortiz testified that they left her home between midnight and 1 a.m.  Zambrano, Sanchez, Lopez, and Ortiz all left in the same car:  Zambrano drove, Sanchez was in the front passenger seat, and Lopez and Ortiz were in the back seats.  They first drove to a McDonald's and ordered food at the drive-through window.  The prosecution later introduced video surveillance of the vehicle proceeding through the McDonald's.

Lopez testified that they left the McDonald's but did not drive towards his house.  Rather, they went to another apartment—the apartment at which Hinton and Gooch lived.  Sanchez got out of the car first and walked to the door of the apartment.  Zambrano got out next, walked to the front of the car, and removed a gun from under the hood of the car.  Zambrano told Lopez to get out as well.  Meanwhile, Ortiz had

2

fallen asleep in the back.  A video recording taken at the apartment captures the car pulling up, the three men exiting the car, and Zambrano removing an item from under the hood of the car.

Lopez testified that, as he, Sanchez, and Zambrano walked to the apartment, "[t]hey tried to hand me the handgun and I just said no." Ex. M at 114.  Someone buzzed them in.  As they walked upstairs, either Sanchez or Zambrano told Lopez to wait on the second floor while they walked up to the third floor.  Hinton and Gooch lived on the third floor.  Lopez waited on the second floor for five to ten minutes and then heard a gunshot.

After hearing the gunshot, Lopez saw Zambrano running down the stairs, so he began to run as well.  The two of them ran back to the car together, and Sanchez followed behind.  Lopez testified that, as they drove away, Sanchez repeatedly told Zambrano "I love you, Jesus.  I love you." Ex. M at 116.  Lopez stayed with the group until the morning and then walked home.  Later that day, he voluntarily went to the Joliet Police Department and described the events of the previous night.

At Sanchez's trial, the prosecution introduced both Lopez and Ortiz's testimony.  Ortiz received use immunity in exchange for his testimony.  During trial, the prosecution pursued an accountability theory of liability, which meant that both Sanchez and Zambrano could be held liable for the murder without evidence showing which one specifically shot the victim.  Sanchez was convicted by a jury, and a judge sentenced him to 61 years in prison.

On direct appeal, Sanchez argued a single issue:  he had received ineffective assistance of counsel, because his attorney had failed to seek an accomplice-witness

instruction. An accomplice-witness instruction warns jurors to view the testimony of an accomplice with "suspicion." Illinois Pattern Jury Instructions—Criminal, No. 3.17 (4th ed. 2000). The Illinois Appellate Court, applying *Strickland v. Washington*, 466 U.S. 668 (1984), held that the attorney's failure to obtain the instruction (1) was not objectively deficient and (2) did not prejudice Sanchez. *People v. Sanchez*, 2013 IL App (3d) 120046-U ¶¶ 17-18. Sanchez filed a petition for leave to appeal (PLA), Ex. E, which the Illinois Supreme Court denied. Ex. F at 1 (Order denying PLA).

Sanchez filed a *pro se* post-conviction petition, which the trial court dismissed. Respondent has not provided this Court with either the petition or the trial court's order. Rather, it has provided only the briefs on appeal from the trial court's dismissal of the post-conviction petition. The appeal brief, however, describes the claims made in the post-conviction petition. *See* Ex. I at 7 (post-conviction brief). First, Sanchez contended that the trial court had erred in failing to appoint counsel to represent him regarding his claim that trial counsel had been ineffective. Second, he contended that trial counsel was ineffective for failing to question Ortiz about dismissal of a firearms charge against him before he testified at trial. Third, Sanchez contended that the prosecutor had violated his right to a fair trial by making an improper closing argument. Sanchez also contended that appellate counsel was ineffective for failing to assert these points on direct appeal. The trial court dismissed the petition without explanation. On appeal, Sanchez, who at this point was again represented by counsel, made four arguments: (1) appellate counsel rendered ineffective assistance in failing to challenge the prosecution's closing argument; (2) trial counsel was ineffective in failing to cross-examine Ortiz about the dismissed charge, and (3) appellate counsel was ineffective in

4

failing to raise trial counsel's ineffective assistance on appeal; and (4) appellate counsel was ineffective in failing to challenge the prosecution's participation in the hearing held by the trial court on Sanchez's contention that his trial counsel had rendered ineffective assistance. The Illinois Appellate Court overruled all of these arguments. *People v. Sanchez*, 2017 IL App (3d) 140967-U. Sanchez did not file a PLA.

## Discussion

To prevail on a petition under 28 U.S.C. § 2254, a petitioner must show (1) his or her incarceration violates the laws, treaties, or the Constitution of the United States, 28 U.S.C. § 2254(a), and (2) that he or she "has exhausted the remedies available in the courts of the State." *Id.* § 2254(b)(1)(A). Applying a liberal reading of Sanchez's *pro se* petition, *Smith v. Dart*, 803 F.3d 304, 309 (7th Cir. 2015), the Court has identified seven claims in Sanchez's section 2254 petition.[1] Of these, claims two through seven are defaulted: two were never presented to the state courts, and four additional claims never underwent a full round of state review, as Sanchez never filed a PLA in his post-conviction appeal. Thus the Court only addresses Sanchez's first claim on the merits.

**I.      Claims two through seven**

The Court first reviews the six claims that Sanchez defaulted, either by never presenting the claims to a state court (claims six and seven) or by never completing "one complete round" of state review (claims two through five).

    **A.      Claims six and seven**

Sanchez asserts two claims that he never presented to the state courts on direct

---

[1] The pages in Sanchez's habeas petition are out of order. Claims one through four are described on pages seven and eight of the habeas corpus petition; claims five through seven are on pages four and five.

or collateral review. In claim six, Sanchez contends his trial counsel provided ineffective assistance by failing to retain a mechanic that could attest to the mechanical problems with the hood of Sanchez's car. Habeas Pet. at 4. Sanchez also alleges his appellate counsel was ineffective for not raising on appeal this alleged failure to trial counsel. *Id.* In claim seven, Sanchez argues his trial counsel provided ineffective assistance when he failed to impeach an officer that testified at his trial and his appellate counsel provided ineffective assistance by not raising this failure on appeal. *Id.* at 5.

Sanchez did not assert any of these claims on either direct appeal or in the briefs he filed on post-conviction appeal. For this reason, the claims are procedurally defaulted. A petitioner has procedurally defaulted his federal claim if he fails to fairly present it through "at least one complete round of state-court review, whether on direct appeal of his conviction or in post-conviction proceedings." *Clemons v. Pfister*, 845 F.3d 816, 819 (7th Cir. 2017).

B.   **Claims two through five**

Next, Sanchez asserts four claims that he raised in his state post-conviction appeal. In claim two, Sanchez alleges the trial court violated his rights by declining to appoint new counsel to assist him in pursuing his ineffective assistance of counsel claim. Habeas Pet. at 5. In claim three, Sanchez alleges he received ineffective assistance of appellate counsel, as his appellate attorney did not challenge the prosecution's adversarial participation during a so-called *Krankel* hearing; he also appears to assert a claim based on the conduct of that hearing in the trial court. *Id.* at 8. *See People v. Krankel*, 102 Ill. 2d 181, 189, 464 N.E.2d 1045, 1049 (1984) (requiring a

post-trial hearing in which the court appoints a *pro se* defendant a new attorney to argue his original counsel was ineffective). In claim four, Sanchez contends his trial counsel rendered ineffective assistance by failing to cross-examine Ortiz about a gun charge that Sanchez contends was dismissed in exchange for Ortiz's testimony, and that his appellate counsel rendered ineffective assistance for failing to raise this issue on appeal. *Id* at 8. In claim five, Sanchez alleges he received ineffective assistance of counsel when trial counsel failed to object to the prosecution's purported misconduct during closing argument, and ineffective assistance of appellate counsel when counsel failed to raise this alleged error on appeal. *Id.* at 4. Sanchez also contends his right to a fair trial was violated by the alleged misconduct during the prosecution's closing. *Id.*

Although Sanchez presented these claims to the state appellate court on post-conviction appeal, he never filed a PLA to bring the claims before the Illinois Supreme Court. "To fairly present his federal claim, a petitioner must assert that claim through at least one complete round of state-court review . . . [which] means that the petitioner must raise the issue at each and every level in the state court system, including levels at which review is discretionary rather than mandatory." *Richardson v. Lemke*, 745 F.3d 258, 268 (7th Cir. 2014). Sanchez has procedurally defaulted these claims.

### C. Excuse

Sanchez offers no excuse for his default of claims two through seven. Presumably he could argue that appellate counsel's ineffective assistance excuses his default of the claims regarding the conduct of proceedings before the trial court and ineffective assistance of trial counsel. But before a claim of ineffective assistance may excuse a procedural default, the underlying ineffectiveness claim must "be presented to

7

the state courts as an independent claim before it may be used to establish cause for a procedural default." *Murray v. Carrier*, 477 U.S. 478, 488-89 (1986). Sanchez did assert a number of claims of ineffective assistance of appellate counsel in his post-conviction appeal, but he did not file a PLA after the state appellate court ruled against him. Thus he did not present the claim of ineffective assistance of appellate counsel through a complete round of state court proceedings. A party may not establish that ineffective assistance of appellate counsel caused a procedural default if that issue was not raised through "one complete round" of state court proceedings. *Martinez v. Mote*, No. 03 C 4251, 2003 WL 22533563, at *1 (N.D. Ill. Nov. 7, 2003) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)). This bars him from using ineffective assistance of appellate counsel as an excuse for the default.

For these reasons, the Court overrules claims two through seven.

**II.     Claim one**

In claim one, Sanchez contends that the state court unreasonably applied *Strickland* by rejecting his claim that he received ineffective assistance of counsel when his attorney did not request an accomplice-witness instruction. The accomplice-witness instruction states:

> When a witness says he was involved in the commission of a crime with the defendant, the testimony of that witness is subject to suspicion and should be considered by you with caution. It should be carefully examined in light of the other evidence in the case.

Illinois Pattern Jury Instructions—Criminal, No. 3.17 (4th ed. 2000).

To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate (1) objectively deficient counsel and (2) actual prejudice. *Strickland v. Washington*, 466 U.S. 668, 687-96 (1984). For a habeas petitioner, "[e]stablishing that

8

a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential' and when the two apply in tandem, review is 'doubly' so." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citations omitted).

A defendant can show prejudice only if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. Thus the Court does not address the first element of *Strickland*, as it concludes that the Illinois Appellate Court reasonably applied the second element of *Strickland* when it determined that Sanchez did not suffer any prejudice from his attorney's failure to obtain the accomplice-witness instruction.

To determine whether the state court unreasonably applied *Strickland*, the Court must consider what arguments supported, or could have supported, the state court's decision. *Richter*, 562 U.S. at 102. First, Sanchez's trial attorney impeached Lopez and Ortiz's credibility through other means. Second, even in the absence of Lopez and Ortiz's testimony, there was adequate evidence to support Sanchez's conviction. A third argument, not discussed by the appellate court, is that the jury was separately instructed to weigh the credibility of the witnesses. These points establish that the state appellate court reasonably concluded Sanchez did not experience prejudice from his attorney's purported error.

First, Sanchez's attorney had already impeached the credibility of both Lopez and Ortiz. Sanchez's attorney introduced evidence showing Lopez was both drunk and high at the time of the murder. Sanchez's attorney also presented evidence of inconsistent statements Lopez made to the Joliet Police Department when he first reported the murder. The attorney also introduced evidence of Lopez's prior felony conviction for aggravated driving under the influence. Ortiz was similarly impeached: Sanchez's attorney showed Ortiz was intoxicated at the time of the murder and that he had received use immunity from the prosecution in exchange for his testimony. All of this supports the Illinois Appellate Court's conclusion that Sanchez did not suffer prejudice from his attorney's decision not to seek the accomplice-witness instruction.

Second, there was sufficient other evidence supporting Sanchez's conviction. Even if the jury had fully discounted Lopez and Ortiz's testimony in light of the accomplice-witness instruction, there was still evidence that (1) Sanchez had been rebuffed by Hinton; (2) Zambrano drove Sanchez, in Sanchez's car, to the scene of the murder with the other parties; (3) video evidence shows Zambrano removing an item from under the hood of Sanchez's car; (4) Sanchez, Zambrano, and Lopez all walked into Hinton's apartment; (5) Hinton heard Sanchez's voice in the moments before Gooch was shot; and (6) video evidence showed Sanchez leaving Hinton's apartment shortly after the murder. The additional evidence of Sanchez's guilt supports the reasonableness of the state appellate court's conclusion that the outcome of the trial would not have been different had Sanchez's attorney sought an accomplice-witness instruction.

The third point was not expressly discussed by the state appellate court but also

supports its conclusion. In Sanchez's trial, the trial court had already introduced a witness instruction that provided guidance similar to the accomplice-witness instruction:

> Only you are the judges of the believability of the witnesses and the weight to be given to the testimony of each of them. In considering the testimony of any witness, you may take into account . . . any interest, bias, or prejudice he may have, and the reasonableness of his testimony considered in light of all the other evidence in the case.

Ex. M at 305 (Trial transcript). In particular, the jury was instructed to consider any "interest, bias, or prejudice" of Lopez and Ortiz, which put the jury on notice of the need to consider their testimony carefully. This point supports the proposition that the court reasonably applied the prejudice element of *Strickland*.

In sum, the state appellate court reasonably applied the prejudice element of *Strickland* in dealing with these claims.

Faced with a similar set of facts, the Seventh Circuit reached the same conclusion in *Blount v. Battaglia*, 188 F. App'x 515 (7th Cir. 2006). In *Blount*, the Seventh Circuit affirmed a district court's denial of a state prisoner's habeas corpus petition. The petitioner argued that his attorney's failure to seek an accomplice-witness instruction amounted to ineffective assistance of counsel. *Id.* at 519. In affirming the denial of this claim, the Seventh Circuit noted the introduction of other impeaching evidence against the witness, the evidence against Blount, and the presence of a jury instruction that provided guidance similar to the accomplice-witness instruction. *Id.* at 519-20. Sanchez's claim is similar: the jury knew of additional impeaching evidence against the witnesses, there was other evidence against him, and the same Illinois jury instruction that the trial court gave in *Blount* was also given here. *Id.*

The Court's determination that the state appellate court acted reasonably is not

altered by the fact that another panel of the same court (with one judge in common) overturned Zambrano's conviction on direct appeal based on his attorney's similar failure to request an accomplice-witness instruction. In *People v. Zambrano*, 2016 IL App (3d) 140178, the Illinois Appellate Court held that Zambrano, who was tried separately from Sanchez, received ineffective assistance of counsel due to his attorney's failure to seek an accomplice-witness instruction. *Id.* ¶ 32. There is a significant difference between the case against Zambrano and the case against Sanchez: Hinton testified that she heard Sanchez's voice in the moments before the shooting. She also testified regarding a motive on Sanchez's part. Whereas Lopez's testimony "was the only evidence establishing Zambrano's participation," *id.*, there was other evidence establishing Sanchez's involvement at the scene of Gooch's murder right before the shot was fired. Thus the fact that the appellate court found that Zambrano was prejudiced by the absence of an accomplice-witness instruction regarding Lopez does not indicate that the court's finding that Sanchez was not prejudiced was unreasonable.

In sum, the Court concludes that the state appellate court did not unreasonably conclude that Sanchez was not prejudiced by his attorney's decision not to pursue an accomplice-witness instruction at trial. The Court therefore denies claim one.

## Conclusion

For the foregoing reasons, the Court directs the Clerk to enter judgment in favor of the respondent on all of Sanchez's claims [dkt. no. 1]. The Court declines to issue a certificate of appealability, as reasonable jurists would not find the Court's procedural default rulings or its merits ruling on count one debatable. *See* 28 U.S.C. § 2253(c)(2);

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

                                                                                          _____
                                                                                          MATTHEW F. KENNELLY
                                                                                          United States District Judge

Date: February 8, 2018